IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ALVA E. CAMPBELL, JR.,

    Petitioner,

v.

CHARLOTTE JENKINS, Warden,
Chillicothe Correctional
Institution,

    Respondent.

Case No. 2:15-cv-1702

JUDGE WALTER H. RICE

---

DECISION AND ENTRY OVERRULING PETITIONER ALVA E. CAMPBELL, JR.'S, OBJECTIONS (DOCS. ##48, 51, 55) TO UNITED STATES MAGISTRATE JUDGE'S SECOND TRANSFER ORDER AS AMENDED AND SUPPLEMENTED (DOCS. #46, 50, 54); SUSTAINING WARDEN'S RENEWED MOTION TO TRANSFER TO THE SIXTH CIRCUIT AS A SECOND PETITION (DOC. #39); OVERRULING PETITIONER'S MOTION FOR LEAVE TO FILE AN AMENDED PETITION TO ADDRESS NEWLY RIPE CLAIMS UNDER *HURST* (DOC. #37), AND RENEWED MOTION FOR LEAVE TO FILE AN AMENDED PETITION (DOC. #47); OVERRULING WITHOUT PREJUDICE PETITIONER'S MOTION FOR AUTHORIZATION TO APPEAR IN ANCILLARY STATE COURT LITIGATION (DOC. #38); TRANSFERRING CASE TO UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT; TERMINATION ENTRY

---

This matter is currently before the Court on Petitioner Alva E. Campbell, Jr.'s, Objections (Docs. ##48, 51, 55) to United States Magistrate Judge Michael Merz's Second Transfer Order, as amended and supplemented (Docs. ##46, 50, 54), transferring this case to the Sixth Circuit Court of Appeals as a second or successive habeas petition. For the reasons set forth below, the Court

OVERRULES those Objections, AFFIRMS the Magistrate Judge's Second Transfer Order, as amended and supplemented, and TRANSFERS the above-captioned case to the Sixth Circuit for a determination of whether Campbell may proceed on his claims.

I.

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") "does not take kindly to repeat requests for habeas relief. It mandates that, if an inmate has already lost one such request, he may not file a 'second or successive' petition without satisfying several stringent requirements." *King v. Morgan*, 807 F.3d 154, 155 (6th Cir. 2015). Those requirements are set forth in 28 U.S.C. § 2244(b)(2) as follows:

> A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—
>
> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>   (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

2

28 U.S.C. § 2244(b)(2). Absent a finding by the Sixth Circuit that one of these exceptions applies, a district court has no jurisdiction to consider a "second or successive" petition. 28 U.S.C. §2244(b)(3)(A).

Nevertheless, not all second-in-time habeas petitions are deemed to be "second or successive." *Panetti v. Quarterman*, 551 U.S. 930, 944 (2007); *Magwood v. Patterson*, 561 U.S. 320, 330-31 (2010). The AEDPA does not define "second or successive," but courts have interpreted that term in the context of "pre-AEDPA abuse-of-the-writ principles that asked whether a petitioner already had a full and fair opportunity to raise the relevant claim in the district court." *Askew v. Bradshaw*, 636 F. App'x 342, 346 (6th Cir. 2016). Under that "abuse-of-the-writ" standard, "a numerically second petition is 'second' when it raises a claim that could have been raised in the first petition but was not so raised, either due to deliberate abandonment or inexcusable neglect." *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).

In a limited number of cases, courts have found that a second-in-time petition was not "second or successive." In *Ford v. Wainwright*, 477 U.S. 399 (1986), the Supreme Court held that a prisoner who is currently insane cannot be executed. The Supreme Court has held that, because a *Ford* claim will never be ripe when the initial habeas petition is adjudicated, a petitioner does not abuse the writ by waiting to file a second-in-time petition asserting a *Ford* claim closer to the date set for execution. *See Panetti*, 551 U.S. at 947.

3

Likewise, the Sixth Circuit has held that certain "newly ripe" claims are not "second or successive" petitions. For example, a known and existing claim, which could not have been presented in the first habeas petition because it was not yet exhausted, can be presented in a second petition without triggering the "second or successive" bar. *In re Bowen*, 436 F.3d at 705-06. The Sixth Circuit has also held that an *ex post facto* challenge, which was not yet ripe when the original petition was filed because the contested change in the law had not yet been implemented, did not constitute a second or successive petition. *In re Jones*, 652 F.3d 603, 605 (6th Cir. 2010).

Whenever a second-in-time petition is presented to the district court, that court must determine whether it is a "second or successive" petition, as that term has been construed. *In re Smith*, 690 F.3d 809 (6th Cir. 2012). If the answer is "yes," the district court has no jurisdiction to consider the claims, and must transfer the case to the court of appeals for a ruling on whether the claims may proceed under one of the exceptions set forth in 28 U.S.C. § 2244(b)(2). However, if the second-in-time petition is not "second or successive," the district court may proceed to adjudicate the claims without authorization from the court of appeals. *Id.* at 809-10; *Burton v. Stewart*, 549 U.S. 147, 153 (2007). This determination is critical because, as Magistrate Judge Merz has noted, if the district court incorrectly finds that a second-in-time petition is not "second or successive," and proceeds to adjudicate the new claims, it will have done so

without any jurisdiction, rendering void any writ that may be issued. Doc. #54, PageID#975.

## II.

Petitioner Alva Campbell was convicted of aggravated murder and sentenced to death. His first habeas petition, filed in 2005, was dismissed with prejudice in 2009, *Campbell v. Bradshaw*, 2:05-cv-193, 2009 WL 773866 (S.D. Ohio Mar. 18, 2009), and the Sixth Circuit affirmed, *Campbell v. Bradshaw*, 674 F.3d 578 (6th Cir. 2012).

In May of 2015, Campbell filed a second-in-time habeas petition, challenging, for the first time, Ohio's lethal injection protocol on numerous grounds. Doc. #1. He later moved for leave to amend the petition to raise additional issues arising from Ohio's revised lethal injection protocol, and the Supreme Court's decision in *Glossip v. Gross*, 576 U.S.—, 135 S. Ct. 2726 (2015). Docs. ##12, 19.

In January of 2016, Magistrate Judge Merz found that Campbell's petition was "second or successive," and transferred the case to the Sixth Circuit for a determination of whether it could proceed. Doc. #22. Campbell, however, asked the Sixth Circuit to dismiss the case as prematurely docketed so that he could appeal the Magistrate Judge's Transfer Order to the undersigned. Doc. ##25, 26.

The undersigned then recommitted the matter to Magistrate Judge Merz. Docs. #27. Magistrate Judge Merz withdrew his previous decision to allow the

5

parties to brief the impact of the Sixth Circuit's decision in *Adams v. Bradshaw*, 817 F.3d 284 (2016) ("*Adams II*").[1] Doc. #28. The Warden then filed a Motion to Transfer the action to the Sixth Circuit as a second or successive habeas petition. Doc. #30. This motion was denied without prejudice to renewal within 30 days of the date the mandate issued in *Adams II*. Doc. #35.

In January of 2017, Campbell filed a Motion for Leave to File an Amended Petition to Address Newly Ripe Claims under *Hurst v. Florida*, —U.S.—, 136 S. Ct. 616 (2016).[2] Doc. #37. To facilitate exhaustion of Campbell's *Hurst* claim in state court, his attorney also filed a Motion for Authorization to Appear in Ancillary State Court Litigation, Doc. #38.

Thereafter, Respondent filed a Renewed Motion to Transfer to the Sixth Circuit as a Second Petition, Doc. #39. On February 24, 2017, Magistrate Judge Merz issued a Second Transfer Order, Doc. #46. Citing *Moreland v. Robinson*, 813 F.3d 315 (6th Cir. 2016), he found that Campbell's Motion for Leave to File an Amended Petition to Address Newly Ripe Claims under *Hurst*, Doc. #37, was actually a disguised second or successive application for habeas relief. Likewise,

---

[1] In *Adams II*, the Sixth Circuit held that, although a *per se* challenge to a particular method of execution must be brought in a § 1983 action, a successful claim that lethal injection cannot be administered in a constitutional manner would bar execution and, therefore, is cognizable in a federal habeas corpus proceeding. 817 F.3d at 299.

[2] In *Hurst*, the Supreme Court held that Florida's death penalty statute violated the Sixth Amendment in that it permitted a death sentence to be imposed based solely on the judge's factual findings concerning aggravating or mitigating circumstances. Campbell contends that Ohio's death penalty statute is substantially similar to Florida's.

he deemed Campbell's original Petition in this case, Doc. #1, and his Motion for Leave to Amend to update his lethal injection claims in light of Ohio's new execution protocol, Doc. #19, to be second or successive petitions. Magistrate Judge Merz, however, stayed the Transfer Order pending an anticipated appeal to the undersigned.

On March 8, 2017, Campbell filed a Renewed Motion for Leave to File an Amended Petition updating his lethal injection claims. Doc. #47. He notes that *Adams v. Bradshaw*, 826 F.3d 306 (6th Cir. 2016) ("*Adams III*") makes it clear that his challenges to the constitutionality of Ohio's lethal injection procedures are cognizable in habeas corpus.

He also argues that these claims are "newly ripe" because, on October 7, 2016, Ohio adopted a new lethal injection protocol. In support of his claims, he desires to incorporate the findings of fact and conclusions of law made by Magistrate Judge Merz in his January 26, 2017, Decision and Order granting a preliminary injunction in *In re: Ohio Execution Protocol Litigation*, —F. Supp. 3d—, 2017 WL 378690 (S.D. Ohio Jan. 26, 2017).[3] Campbell is one of several named plaintiffs in that case, seeking declaratory and injunctive relief under 42 U.S.C. §1983.

---

[3] That Decision and Order was initially affirmed by a panel of the Sixth Circuit, *In re: Ohio Execution Protocol*, 853 F.3d 822 (6th Cir. 2017), but the Sixth Circuit, sitting *en banc*, thereafter vacated the preliminary injunction. *See In re: Ohio Execution Protocol*, 860 F.3d 881 (6th Cir. 2017), *cert. denied*, 137 S. Ct. 2238 (2017). Trial upon the merits of the litigation has not yet been held.

7

Campbell also filed Objections to the Second Transfer Order, arguing that Magistrate Judge Merz erred in concluding that his habeas petition asserting lethal injection claims, and his motion for leave to assert a *Hurst* claim, were "second or successive." Doc. #48. Magistrate Judge Merz then issued an Amendment and Supplement to Second Transfer Order, addressing those Objections and again staying transfer of the case, pending an anticipated appeal to the undersigned. Doc. #50. Campbell again filed Objections, Doc. #51, and the Warden filed a Response, Doc. #53. On recommittal, Magistrate Judge Merz then issued a Second Supplemental Memorandum Opinion, Doc. #54, to which Campbell filed additional Objections, Doc. #55, and the Warden a Response, Doc. #56.

### III.

Campbell argues that, because the transfer of a petition to the court of appeals is akin to an order dismissing the case for lack of jurisdiction, Magistrate Judge Merz's Second Transfer Order must be viewed as a Report and Recommendation on a dispositive motion, rendering it subject to *de novo* review under 28 U.S.C. § 636(b)(1).

As Magistrate Judge Merz points out, there is no authority to support Campbell's characterization of a transfer order on a second or successive petition as a dispositive matter. However, the Court need not resolve this issue. Given that the question of whether a second-in-time petition is "second or successive"

8

involves a pure question of law, the Second Transfer Order is subject to *de novo* review regardless of whether it is considered a dispositive order.

IV.

For the reasons set forth below, the Court concludes that Campbell's Renewed Motion for Leave to File an Amended Petition asserting challenges to Ohio's lethal injection protocol, Doc. #47, and his Motion for Leave to Amend to assert a *Hurst* claim, Doc. #37, are both "second or successive" petitions that must be transferred to the Sixth Circuit Court of Appeals for a determination, under 28 U.S.C. §2244(b)(2), of whether the claims may proceed.[4]

A.  Challenges to Ohio's Lethal Injection Protocol

It now appears to be undisputed that lethal injection claims of the kind asserted by Campbell are cognizable in habeas corpus. *See Adams III*, 826 F.3d at 321 ("to the extent that Adams challenges the constitutionality of lethal injection in general and not a particular lethal-injection protocol, his claim is cognizable in habeas."). The only question is whether Campbell's lethal injection claims are "second or successive," such that this Court must transfer them to the Sixth Circuit for a determination of whether they may proceed under one of the exceptions set forth in § 2244(b)(2).

---

[4] As Magistrate Judge Merz noted, because Campbell's Renewed Motion to Amend, Doc. #47, proposes to substitute four new grounds for relief for the nine asserted in the original petition, Doc. #1, and to replace the original petition with an amended petition, there is no longer any need to determine whether that original filing constitutes a "second or successive" petition. Doc. #54, PageID#972 n.2.

9

Magistrate Judge Merz properly ordered that the claims be transferred. Although lethal injection has been the sole method of execution in Ohio since 2001, Campbell did not challenge its constitutionality in his first habeas petition and, as Magistrate Judge Merz noted, Campbell has offered no reason why he could not have done so. Under the "abuse-of-the-writ" standard, his second-in-time petition is therefore "second or successive." *See In re Bowen*, 436 F.3d at 704 (holding that a second-in-time petition is second or successive "when it raises a claim that could have been raised in the first petition but was not so raised, either due to deliberate abandonment or inexcusable neglect.").

Notably, just two years after his petition was dismissed, Campbell joined several other death row inmates challenging the constitutionality of Ohio's lethal injection protocol in a civil lawsuit seeking declaratory and injunctive relief under 42 U.S.C. § 1983. *In re: Ohio Execution Protocol Litigation*, Case No. 2:11-cv-1016. As previously noted, that litigation is ongoing.

The Sixth Circuit has held that each time Ohio's lethal injection protocol changes, the statute of limitations begins to run anew in a § 1983 action. *See Cooey v. Strickland*, 604 F.3d 939, 942 (6th Cir. 2010). Campbell argues that similar principles dictate that each time Ohio's lethal injection protocol changes, he must be given the opportunity to challenge the procedures in a new habeas

10

petition. In the Court's view, Magistrate Judge Merz properly rejected this argument.[5]

Campbell contends that his current lethal injection claims are based on factual predicates that did not arise until Ohio changed its lethal injection drug protocol from one drug to three drugs on October 7, 2016, years after his first habeas petition had been dismissed. According to Campbell, because these lethal injection claims are "newly ripe," the filing of his second-in-time petition should not be deemed an abuse of the writ.

Armed with "new evidence" acquired in the context of his § 1983 litigation, Campbell argues that this Court has authority to adjudicate his new grounds for habeas relief. In support, Campbell relies on *Adams III*. In *Adams III,* although the Sixth Circuit affirmed the district court's order dismissing Adams' petition for a writ of habeas corpus on the merits, it noted—in dicta—that Adams could still challenge the constitutionality of Ohio's lethal injection protocol in the context of his ongoing § 1983 action.[6] *Adams III*, 826 F.3d at 321. Campbell relies heavily on the following language from *Adams III:*

---

[5] As Magistrate Judge Merz stated in *Raglin v. Mitchell*, No. 1:00-cv-767, 2017 WL 1313852, at *16 (S.D. Ohio Apr. 10, 2017), "gathering new evidence in support of a habeas claim is different from concluding that a new habeas claim 'arises' for limitations purposes every time new evidence is discovered."

[6] Along with Campbell, Adams is a named plaintiff in the § 1983 action cited above, *In re: Ohio Execution Protocol Litigation.*

11

> Adams's constitutional challenge to Ohio's protocol can be explored within his ongoing § 1983 action. "[I]n order to obtain relief from his sentence, [Adams] would first have to gather facts showing that Ohio is unable to administer lethal injection in a constitutionally permissible manner. And this is precisely the type of discovery that [Adams] can pursue in his § 1983 litigation."

*Id.* (quoting *Scott v. Houk*, 760 F.3d 497, 512 (6th Cir. 2014)).

As Magistrate Judge Merz noted, *Adams III* says *nothing* about whether evidence gathered in the § 1983 action can be used to assert new habeas claims in a *second or successive* petition. Campbell argues, however, that this is implied in the quote from the *Scott* case. Not so.

In *Scott*, the Sixth Circuit acknowledged that the relief Scott sought—an order vacating his death sentence—was available only through a federal habeas claim. The court refused to remand, for further development, Scott's habeas claim challenging lethal injection as a method of execution, but noted that Scott could pursue his constitutional challenge in the context of his ongoing § 1983 litigation. The court further noted that, if Scott succeeded on his § 1983 claim, he would still achieve the desired result. *Scott*, 760 F.3d at 512 ("We are assured that Scott's death sentence will not be carried out if, and so long as, a federal court determines that Ohio is incapable of doing so in accordance with the law."). There is no indication that the Sixth Circuit believed that Scott could pursue this claim any further in the context of a second or successive habeas petition.

Campbell argues that his constitutional challenges to Ohio's lethal injection protocol are "not second or successive, but merely second in time," because the

12

"factual predicates" for those claims arose after his original petition was fully adjudicated. Doc. #55, PageID#982. He cites Ohio's new lethal injection protocol, recent failings in Ohio executions, and Ohio's inability to legally obtain the necessary execution drugs. Evidence concerning these same issues was presented at a five-day hearing in the § 1983 case. Campbell maintains that these recent developments, plus his own deteriorating health condition, render his habeas claims "newly ripe," akin to those at issue in *Panetti* and *Jones*.

*Panetti* is clearly distinguishable. There, the claim at issue was newly ripe because it would have been premature for the petitioner to include a *Ford* claim in his original petition. "[C]laims of incompetency to be executed remain unripe at early stages of the proceedings." 551 U.S. at 947. However, it cannot be said that it would have been *premature* for Campbell to mount general constitutional challenges to Ohio's lethal injection protocol in his original petition.[7] After all, it has been Ohio's sole method of execution since 2001, four years *before* Campbell filed his first petition.

*In re Jones* is more closely on point. There, the petitioner's *ex post facto* claim was not ripe when the original petition was filed because the changes to Michigan's parole system had not yet occurred. 652 F.3d at 605. The court noted that it would serve "no useful purpose" to require a petitioner to assert an unripe *ex post facto* claim in the original petition merely to "leave open the chance

---

[7] Campbell is not challenging a particular drug combination in the context of this litigation.

13

of reviving their challenges in the event that subsequent changes to the state's parole system create an *ex post facto* violation." *Id.*

In contrast to *Jones*, nothing prevented Campbell from challenging the constitutionality of Ohio's lethal injection protocol at the time his original petition was filed. Campbell argues that his lethal injection claims, as amended, did not ripen until Ohio changed its drug protocol in October of 2016. However, as Respondent notes, this is disingenuous given that, since 2011, Campbell has continuously challenged the constitutionality of *numerous variations* of Ohio's lethal injection protocol in the context of his § 1983 lawsuit.

In a similar case, the Sixth Circuit recently held that, even though the petitioner's challenge to the constitutionality of Ohio's lethal injection protocol was cognizable in habeas corpus, it was nevertheless barred as a second or successive petition, because it did not meet the requirements of § 2244(b)(2). *In re Lawrence Landrum*, No. 16-3151 (6th Cir. Feb. 13, 2017) (unreported Order; Doc. #41-1, PageID##768-771). The petition did not "rely on a new rule of constitutional law made retroactive by the Supreme Court." *Id.* at PageID#770. Moreover, given that lethal injection became the sole method of execution in 2001, Landrum could have amended his original petition, which remained pending until 2006, to raise such a challenge. The court rejected Landrum's argument that the factual predicate for his claim did not arise until Ohio revised its lethal injection protocol in 2011, noting that Landrum had not identified any "practices or procedures from

14

the September 2011 protocol that amount to a factual predicate that could not have been discovered previously." *Id.*

Campbell maintains that his case is distinguishable because, unlike Landrum, he *has* "identified practices or procedures" from the new protocol, as well as his own individual health characteristics that amount to a factual predicate that could not have been discovered previously. The Court disagrees. In reviewing the Proposed Lethal-Injection Grounds for Relief," Doc. #47-1, the Court notes that Campbell's challenges are based on a claim that the State of Ohio cannot constitutionally execute him by lethal injection. In fact, Campbell alleges that Ohio's execution protocol is unconstitutional regardless of what particular drug mixture is used. He has identified no practices or procedures arising from the new protocols amounting to a factual predicate that could not have been discovered sooner.

With respect to his individual health characteristics, Campbell cites to a long history of alcohol and drug abuse, and a history of hypertension, multiple invasive surgeries, heart and respiratory ailments, and psychiatric disorders. He alleges that, regardless of what lethal injection protocol is used, these unique characteristics render his death by lethal injection unconstitutional. *Id.* at PageID##876-78. He fails to show, however, why the factual predicate for these claims could not have been discovered previously.

The Sixth Circuit recently rejected similar arguments in *In re Tibbetts*, — F.3d—, 2017 WL 3204732 (6th Cir. July 24, 2017), when it dismissed Tibbetts'

15

second or successive petition raising claims that his execution by lethal injection under Ohio law violated his constitutional rights. Like Campbell, Tibbetts argued that his claims did not become ripe until Ohio revised its execution protocol in 2013 and again in 2016. The court found that "none of the newly arising circumstances identified by Tibbetts in his second habeas petition are necessary to a general claim that his sentence to death by lethal injection is unconstitutional." *Id.* at *2 (citing *In re: Lawrence Landrum*). Because lethal injection became Ohio's primary method of execution in 2001, Tibbetts' claim regarding the constitutionality of lethal injection was ripe when he filed his first petition. To the extent that Tibbetts was challenging Ohio's use of midazolam, such a challenge was properly brought under § 1983.

In addition, like Campbell, Tibbetts argued that certain physical and physical ailments increased the likelihood that he would be unconstitutionally harmed by the use of lethal injection. The Court found that these circumstances were not "newly ripe." The Court also rejected the idea that such physical ailments were comparable to a claim of mental incompetency, like that at issue in *Panetti*. There is a material difference between executing someone who lacks the "capacity to come to grips with his own conscience or deity," and someone who suffers from physical infirmities. *Id.* at *3 (quoting *Ford*, 477 U.S. at 409)). Moreover, "to the extent there *may* be a substantial risk of severe pain and suffering in the particular method of execution to be employed, again, Tibbetts' redress is under § 1983." *Id.* (emphasis in original).

16

As with Landrum and Tibbetts, Campbell has failed to show why he could not have raised challenges to the constitutionality of Ohio's lethal injection protocol in the context of his first petition, filed in March of 2005 and dismissed in 2009. Accordingly, the Court finds that his Renewed Motion for Leave to File an Amended Petition, Doc. #47, is a second or successive petition that must be transferred to the Sixth Circuit for a determination of whether Campbell may proceed under one of the exceptions set forth in 28 U.S.C. § 2244(b)(2).

### B. Motion for Leave to File an Amended Petition to Address Newly Ripe Claims Under *Hurst*

Campbell has also moved for leave to amend his petition to assert a claim under *Hurst v. Florida*, —U.S.—, 136 S. Ct. 616 (2016). Doc. #37. In *Hurst*, the Supreme Court found that Florida's capital sentencing scheme violated the Sixth Amendment, given that the jury was not required to make critical factual findings necessary to impose the death penalty. *Id.* at 621-22 (citing *Ring v. Arizona*, 536 U.S. 584 (2002)). Campbell maintains that Ohio's capital sentencing scheme suffers from the same flaw.

Relying on *Moreland v. Robinson*, 813 F.3d 315 (6th Cir. 2016), Magistrate Judge Merz concluded that Campbell's Motion for Leave to File an Amended Petition to Address Newly Ripe Claims Under *Hurst*, Doc. #37, was actually a second or successive petition in disguise and that it must, therefore, be transferred to the Sixth Circuit for a determination as to whether Campbell can proceed. In *Moreland*, the court held that a motion for leave to amend "may not be used as [a]

17

vehicle[] to circumvent the limitations that Congress has placed upon the presentation of claims in a second or successive application for habeas relief." *Id.* at 322.

As with his lethal injection claims, Campbell argues that his *Hurst* claim should not be deemed a second or successive petition. According to Campbell, because *Hurst* was not decided until after his original petition was dismissed, it is a "newly ripe" claim, and it would not be an abuse of the writ to allow him to pursue it.

The Court disagrees. As several courts have pointed out, *Hurst* simply applied the principles laid down many years ago in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002)—that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. *See Hutton v. Mitchell*, 839 F.3d 486, 499 (6th Cir. 2016) (explaining that *Hurst* "reiterated" *Apprendi*'s holding, and "rel[ied] on *Ring*."); *Sneed v. Jenkins*, No. 5:17-cv-83, 2017 WL 564821, at *4 (N.D. Ohio Feb. 13, 2017) ("The Supreme Court in *Hurst* plainly and expressly *applied* the standard it first set forth in *Apprendi* . . . and later applied to capital cases in *Ring* . . . to Florida's capital-sentencing scheme; it neither expanded the *Apprendi/Ring* rule nor announced a new rule."); *State v.*

18

*Mason*, —N.E.3d—, 2016-Ohio-8400, ¶ 42 ("*Hurst* did not expand *Apprendi* and *Ring*.").[8]

Given that *Apprendi* and *Ring* were decided before Campbell filed his first petition, there appears to be no reason why Campbell could not have included a *Hurst*-like claim in that original petition. Accordingly, the Court agrees with Magistrate Judge Merz that Campbell's Motion for Leave to File an Amended Petition to Address Newly Ripe Claims Under *Hurst*, Doc. #37, is a "second or successive" petition that must be transferred to the Sixth Circuit for a determination, under 28 U.S.C. § 2244(b)(2), as to whether Campbell may proceed.

## V.

For the reasons set forth above, the Court OVERRULES Petitioner Alva E. Campbell, Jr.'s, Objections (Docs. ##48, 51, 55) to Magistrate Judge's Second Transfer Order, as amended and supplemented (Docs. #46, 50, 54), and

---

[8] Moreover, because Ohio's capital sentencing scheme is materially different than Florida's capital sentencing scheme, any *Hurst* claim would likely fail on the merits. Under Florida law, although the jury issues an advisory verdict of death or life in prison, it is the judge who makes the crucial determination that renders a defendant *eligible* for the death penalty. *See Hurst*, 136 S. Ct. at 620 (citing Fla. Stat. § 921.141). In contrast, under Ohio law, a jury must find one or more aggravating circumstances before the defendant is eligible for the death penalty. *See State v. Belton*, 149 Ohio St. 3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶59 (citing Ohio Rev. Code § 2929.03 and § 2929.04)).

SUSTAINS Respondent Warden's Renewed Motion to Transfer to the Sixth Circuit as a Second Petition (Doc. #39).

The above-captioned case is TRANSFERRED to the United States Court of Appeals for the Sixth Circuit, pursuant to 28 U.S.C. § 1631, for a determination of whether Petitioner may proceed on his new grounds for relief.[9]

Given that this Court lacks jurisdiction to consider Petitioner's "second or successive" petitions, the Court OVERRULES Petitioner's Motion for Leave to File an Amended Petition to Address Newly Ripe Claims Under *Hurst* (Doc. #37), and Petitioner's Renewed Motion for Leave to File an Amended Petition (Doc. #47).

Petitioner's Motion for Authorization to Appear in Ancillary State Court Litigation (Doc. #38) is OVERRULED WITHOUT PREJUDICE to refiling should the Sixth Circuit determine that this Court has jurisdiction to adjudicate the *Hurst* claim.

Date: August 16, 2017

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

---

[9] Section 1631 provides that whenever a civil action is filed in a court that lacks jurisdiction, if justice so requires, it shall be transferred to the court in which the action should have been filed.